opinion of the court was delivered by Mr. Justice Clifford (24 How. [65 U. S.] 110), in which he held that whenever the tug, under the charge of her own master and crew, and in the usual and ordinary course of such an employment, undertakes to transport another vessel, which, for the time being, has neither her master nor crew on board, from one point to another, over waters where such accessory motive power is necessarily or usually employed, she must be held responsible for the proper navigation of both vessels. By their employment the master and crew of the tug do not necessarily become the agents of the owners of the tow; they are still responsible to the owners of the tug. The decree of the circuit court was affirmed.]

## Case No. 6,318.

### HEDDEN v. EATON et al.

[2 N. J. Law J. (1879) 49.]

Circuit Court, D. New Jersey.

PATENTS—NOVELTY—PRIOR USE AND ABANDONMENT—FERROTYPES.

[1. Prior uses, merely experimental, and abandoned as unsuccessful, are not sufficient to show want of novelty in a perfected improvement, made some years later.]

[2. Hedden's patent of March 7, 1876, reissue No. 6,982, for improvement in ferrotype plates and ferrotypes, is valid.]

Bill for infringement of patent of March 7th, 1876, reissue No. 6,982, for improvement in ferrotype plates and ferrotypes. Claim 1. A ferrotype plate covered by a coating composed of linseed oil and India red, substantially as and for the purpose set forth. 2. A ferrotype when taken upon a reddish brown or chocolate colored plate prepared substantially as described. Infringement of 1st claim was proved, and the question was whether the patent is void for want of novelty.

Wm. W. Swann and Chauncey Smith, for complainant.

Leonard E. Curtis, for defendants.

NIXON, District Judge (after reviewing the evidence), held that the evidence establishes: 1. That sheet iron coated with varnish composed of substantially the same ingredients and having the same color, was in use for other articles long before the alleged invention of Hedden. 2. That the use of varnish of a chocolate color, composed mainly of India red and linseed oil, was known and used for the backs of ferrotype plates several years before the date of complainant's patent. 3. That these backs were not finished with a sufficiently smooth and glazed surface, to make the pictures produced on them such an improvement on the pictures taken on the black plates as to attract public attention, or secure the public favor. 4. That the production of pictures in the chocolate colored plates, ceased some years before the date of the alleged invention of Hedden. 5. That by more perfectly finishing the chocolate or reddish brown plate, according to the directions of Hedden, a better and more life-like picture was obtained, evinced by the popularity of the pictures taken on his plates. (Authorities cited as to patentable improvements in processes leading to a better and cheaper production of iron: Smith v. Nicholas, 21 Wall. [88 U. S.] 112; 1 Webst. Pat. Cas. 14; Crane v. Price, Id. 409; Neilson v. Harford, Id. 295.

The complainant's success attests the improvement; the prior uses alleged were experimental and abandoned as unsuccessful. Hedden took up the matter and led the way to a perfected improvement which they groped after but never quite attained to. There is patentability in such improvement, and a decree must be entered against the defendants for infringement of the 1st claim of the complainant's patent.

## Case No. 6,319.

### HEDGES et al. v. PAULIN.

[5 Biss. 177.] [1]

Circuit Court, N. D. Illinois. Oct., 1870.

TITLE UNDER STATUTES OF LIMITATION.

Where a party claims land under the Illinois limitation laws, he must deduce a title directly from a specified source, and by a chain, each link of which is a genuine conveyance.

[This was an action at law by Catherine Hedges and others against Paulin's lessees.]

Mattocks & Mason, for plaintiffs.

Milton Peters, for defendants.

BLODGETT, District Judge (charging jury). The defendants claim to recover the property under one of the limitation acts of this state (1 Gross' Laws, 429, § 8; Rev. St. 1874, c. 83, § 4), which provides that a person in possession of property under a title deducible of record, either from the United States or from any person authorized to sell land for taxes, or from a marshal's or sheriff's sale, or any other judicial proceeding, having had possession under a connected title deducible from either of these specific sources, shall be deemed the owner as against any other person claiming title. It becomes my duty to instruct you that a person claiming title under this statute, that is, under this limitation law, must deduce a title directly from either of the specified sources, each link in the chain of which shall be genuine; that is to say, the parties setting up such a title cannot claim under a title where any of the links are forged, no matter how innocent the person setting it up may be. He is bound to know and to stand by the genuineness of the respective conveyances in his title, and if any of them fail, his title under this statute, then, would fail; that is to say, he would not have made out the case provided for in the statute. In order to

---

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

make out a defense under this statute, he must deduce a title by a chain of genuine conveyances. Then, if you shall believe, from all the evidence that has been adduced, that the deed from Timothy Hedges to Thomas Mullen was not a genuine deed, you will, of course, find for the plaintiffs on that point, because the defendants will not have made out the defense which they set up under that branch of the case. If you shall come to the conclusion that this deed was not forged, or that there is not sufficient proof of the forgery, then they will have made out a chain of title which would answer the requirements of the statute.

Verdict and judgment for defendants.